**William H. DOBBS d/b/a Bill Dobbs Construction and Dobbs Masonry, Appellee,**

v.

**KNUDSON, INC., a corporation, et al., Appellees,**

**Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan; Contractors, Laborers, Teamsters and Engineers Pension Plan; Omaha Construction Industry Health and Welfare Plan; and Omaha Construction Industry Pension Plan, Appellants.**

**No. 63451.**

Supreme Court of Iowa.

May 21, 1980.

Eugene R. Commander of Smith, Peterson, Beckman & Wilson, Council Bluffs, David D. Weinberg of Weinberg & Weinberg, Omaha, Neb., and Dean G. Kratz of McGrath, North, O'Malley, Kratz, Dwyer, O'Leary & Martin, Omaha, Neb., for appellants.

David S. Lash of Porter, Lash, Reilly & Tauke, Council Bluffs, for appellees Knudson, Inc., and Universal Surety Company.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK and LARSON, JJ.

McCORMICK, Justice.

The question here is whether health, welfare and pension trusts may make public improvement lien claims for unpaid sums which subcontractors on the public improvement were obligated to pay for their employees. The trial court held they may not. We reverse and remand.

Knudson, Inc., contracted with the Iowa Department of Social Services ("the Department") to construct a building at the Glenwood State Hospital School. Knudson furnished a performance bond as required by § 573.2, The Code, with Universal Surety Company ("Universal") as surety. William

H. Dobbs and Bourke Lumber were subcontractors on the project. Each of them had collective bargaining agreements which required them to pay sums to health, welfare and pension trusts based on hours their employees worked. These trusts were the Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan, the Contractors, Laborers, Teamsters and Engineers Pension Plan, the Omaha Construction Industry Health and Welfare Plan, and the Omaha Construction Industry Pension Plan ("the trusts").

Disputes arose between Knudson and the subcontractors. Dobbs and Bourke filed claims with the Department under section 573.7 for payments allegedly in default on their contracts. The trusts filed claims for payments which Dobbs and Bourke allegedly owed to the trust funds pursuant to the collective bargaining agreements for work of their employees on the project.

The present action was initiated by Dobbs against Knudson, Universal, the trusts and other parties, pursuant to section 573.16, to determine the rights of the claimants to the retainage held by the Department in accordance with section 573.12. The trusts cross-claimed against Knudson and Universal for judgment on their claims. Knudson filed a bond to secure any possible judgments as provided in section 573.16 in order to obtain payment of the retainage.

Subsequently Knudson moved for summary judgment on the trusts' cross-claims. The trial court sustained the motion, and the trusts appealed.

■ Even though the summary judgment did not dispose of the entire case, it was final as to the trusts. Their claims are based on different contracts than those of other claimants. Therefore the summary judgment was final and appealable as to them under principles delineated in *McGuire v. City of Cedar Rapids*, 189 N.W.2d 592, 597–98 (Iowa 1971).

■ The appeal involves section 573.7, which provides in material part:

Any person . . . who has, under a contract with . . . subcontractors, performed labor, or furnished . . . service . . . in the construction of a public improvement, may file, with the officer, board, or commission authorized by law to let contracts for such improvement, an itemized sworn, written statement of the claim for such labor, or . . service . . . .

We are obliged to construe the statute liberally with a view to promoting its objects and assisting the parties in obtaining justice. § 4.2, The Code; *see Gollehon, Schemmer & Associates, Inc. v. Fairway-Bettendorf Associates*, 268 N.W.2d 200, 201 (Iowa 1978).

Knudson's motion for summary judgment was based on its allegation that "the items for which claim is made by said trusts are not claims for 'labor or service' within the meaning of section 573.7, Code of Iowa," and the trial court sustained the motion on that ground. The court reasoned that the claims did not come within the section because they were for "fringe benefits" rather than wages. We disagree with this construction of the statute.

■ Section 573.7 requires that the claim be for "labor" or "service." Whether a claim is for labor or service is determined not by the nature of what the claimant receives but rather by the nature of what is done to be entitled to receive it. The issue, therefore, is not whether the payments to the trust funds are fringe benefits or wages but whether the employees of Dobbs and Bourke performed labor or service to become entitled to the payments on their behalf. *See Forsberg v. Loss Construction Co.*, 218 Iowa 818, 825, 252 N.W. 258, 261 (1934) ("[U]nder the statute one who furnishes material or performs labor under contract with a subcontractor in the construction of a public improvement may file a claim.").

■ The employees were laborers, carpenters and bricklayers who indisputably performed labor for Dobbs and Bourke on the project and thereby earned the right to have the payments made to the trusts pursuant to the collective bargaining agree-

ments. Thus we hold that the payments to the trusts are for labor within the meaning of section 573.7.

This holding is consistent with prior cases decided under both chapter 573 and under chapter 572, the general mechanics' lien statute, which this court has said is analogous to chapter 573. *Cities Service Oil Co. v. Longerbone*, 232 Iowa 850, 853, 6 N.W.2d 325, 326–27 (1942). Cases under chapter 572 relied on by Knudson involved situations where items which were not part of the consideration for the labor or service were held not to be lienable. *See Wormhoudt Lumber Co. v. Union Bank & Trust Co.*, 231 Iowa 928, 934–35, 2 N.W.2d 267, 271 (1942) (workers' compensation insurance and social security taxes); *Monona County v. O'Connor*, 205 Iowa 1119, 1121, 215 N.W. 803, 804 (1927) (board and lodging). However, as the court explained in *Crane Co. v. Westerman*, 232 Iowa 1394, 1398, 8 N.W.2d 412, 414 (1943), those items were held not to be lienable only because they were not part of the consideration for the labor or service. Accordingly, in *Crane*, where the board and lodging were part of the agreed consideration for the labor, the items were held to be lienable. *Id.* at 1397, 8 N.W.2d at 413–14. It is established in this case that the applicable collective bargaining agreements made payments into the trusts a part of the consideration for the employees' labor, and, thus, under *Crane* the trust contributions are lienable.

This result is supported by authority from other jurisdictions. In *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 217–18, 77 S.Ct. 793, 797, 1 L.Ed.2d 776, 783 (1957), the United States Supreme Court held that contributions to union health and welfare trust funds were lienable under section 2(a) of the Miller Act, 40 U.S.C. § 270b(a) (1976), which is a federal counterpart of section 573.7 and uses the term "labor" as does the Iowa statute. So far as we can tell, courts in all states which have confronted the question under statutes analogous to section 573.7 have reached the same conclusion. *Bernard v. Indemnity Insurance Co.*, 162 Cal.App.2d 479, 484–87, 329 P.2d 57, 60–63 (1958); *Trustees of Colorado*

*Carpenters & Millwrights Health Benefit Trust Fund v. Pinkard Construction Co.*, Colo., 604 P.2d 683, 684–85 (1979). The New York courts have gone even further, holding that contributions to a union welfare trust were included in the concept of "wages" where the city had required a bond covering only that narrower class of claims. *Martin v. William Casey & Sons, Inc.*, 5 A.D.2d 185, 186–89, 170 N.Y.S.2d 228, 230–32 (1958), *aff'd mem.* 8 N.Y.2d 728, 167 N.E.2d 646, 201 N.Y.S. 104 (1960). A case relied on by Knudson, *Ridge Erection Co. v. Mountain States Telephone & Telegraph Co.*, 37 Colo.App. 477, 549 P.2d 408 (1976), involved the Colorado mechanics' lien statute, which contains language differing greatly from that of chapter 573, and was distinguished by the Colorado Supreme Court on that basis in *Pinkard Construction*, a case involving the Colorado equivalent of chapter 573.

▇ In the present case, we hold that the trial court erred in ruling that the contributions to the trusts are not cognizable claims under section 573.7.

▇ The remaining problem in this case concerns the right of the trusts rather than the individual employees to file the claims. The courts of other jurisdictions which have addressed this problem have uniformly held that the trusts in this kind of situation may file and enforce the claims. *Sherman*, 353 U.S. at 218–20, 77 S.Ct. at 798, 1 L.Ed.2d at 784; *Bernard*, 162 Cal.App.2d at 487–88, 329 P.2d at 63; *Pinkard Construction*, 604 P.2d at 685–86; *Martin*, 5 A.D.2d at 189–90, 170 N.Y.S. at 232–33. As the Court stated in *Sherman*:

> Whether the trustees of the fund are, in a technical sense, assignees of the employees' rights to the contributions need not be decided. Suffice it to say that the trustees' relationship to the employees, as established by the master labor agreements and the trust agreement, is closely analogous to that of an assignment. The master labor agreements not only created Carter's obligation to make the specified contributions, but simultaneously created

the right of the trustees to collect those contributions on behalf of the employees. The trust agreement gave the trustees the exclusive right to enforce payment. The trustees stand in the shoes of the employees and are entitled to enforce their rights.

353 U.S. at 219–20, 77 S.Ct. at 798, 1 L.Ed.2d at 784.

Similar reasoning supports the same conclusion in the present case. Although the right to make the claim for labor furnished on the public improvement is given in section 573.7 to the person who furnishes it, the trusts have the contractual right to make the claim for those persons. Any other result would frustrate the legislative purpose in allowing such claims to be made and would unjustly enrich the party with the obligation to make the payments.

The trial court erred in entering summary judgment against the trusts on their cross-claims. We find it unnecessary to address the other contentions of the parties.

REVERSED AND REMANDED.